In re Tyrone L. CARR Sr. and Patricia Ann Carr, Debtors.

Bankruptcy No. 80–02063 T (7).

United States Bankruptcy Court, E. D. Pennsylvania.

Feb. 23, 1982.

Karen L. Turner, Philadelphia, Pa., for defendant.

Robert Manara, Philadelphia, Pa., for plaintiff.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The debtors in this case seek to avoid a judicial lien on exempt property; the holder of that lien objects to the proposed lien avoidance on the grounds that the lien is a security interest, and not a judicial lien. For reasons hereinafter given, we will dismiss the lienholder's objections, and grant the debtors' application to avoid the judicial lien.[1]

The facts of this case are as follows:

Tyrone and Patricia Carr (hereinafter, the debtors) filed a voluntary joint petition seeking relief under Chapter 7 of the Bankruptcy Code (hereinafter, the Code), 11 U.S.C. §§ 101–1330 (1979), on August 21, 1980. In the schedules accompanying the petition, the debtors listed as exempt their interest in their residence located at 225 Reed Street, Reading, Pennsylvania.

In 1975, the debtors entered into a consolidation loan with Hamilton Bank (formerly, National Central Bank, and hereinafter, the Bank). The debtors executed a promissory note in the amount of $12,129, which contained a confession of judgment clause. The docketing of the confessed judgment in June, 1977 created a lien against all real property of the debtors. 42 Pa.Cons.Stat. Ann. § 4303 (Purdon 1980).

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

On February 17, 1981, pursuant to 11 U.S.C. § 522(f)(1) (1979), the debtors filed an application to avoid the lien of the Bank on their residence to the extent that lien impaired their claimed exemption. The Bank filed an objection and answer to the debtor's application on March 6, 1981. A hearing was held on the application on May 26, 1981, at which time the matter was taken under advisement. Briefs were submitted by both parties.

In this case, the Bank has presented several arguments in support of its position that it has a security interest in the debtors' real property. If indeed the Bank is correct, the debtors could not avoid ·he lien, as § 522(f) applies only to judicial liens and certain security interests in household goods. The debtors assert that the Bank has only a judicial lien; they base their view on prior decisions of this court and other bankruptcy courts in this district which hold that the lien obtained by the confession of judgment is, under the provisions of the Bankruptcy Code, a "judicial lien." *In re Natale*, 5 B.R. 454 (Bkrtcy.E.D. Pa.1980); *In re Porter*, 7 B.R. 356 (Bkrtcy. E.D.Pa.1980).

The basic argument presented by the Bank is that the parties intended and accomplished the creation of a security interest in the debtors real property. The Bank believes that the agreement signed by the debtors explicitly grants the Bank a security interest in the property. The Bank argues that under state law, the entire transaction as a whole must be considered in determining whether a security interest has been created.

At the heart of the Bank's position is the axiom that a security interest under state law is a "security interest" under the Bankruptcy Code.[2] That basic premise, while arguably supported in part by the Code and the legislative history, see, H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 314 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787, is not conclusive of the issue.

Initially, we note that state law governs the existence *vel non* of secured interests asserted by the parties in bankruptcy. 4 Collier on Bankruptcy § 544.02 (15th ed. 1979). Therefore, we must look to · the concept of security interest under state law as our first step in determining whether under the Bankruptcy Code a particular transaction results in a "security interest." Article IX of the UCC, as enacted in Pennsylvania, 13 Pa.Cons.Stat.Ann. §§ 9101– 9507 (Supp. Purdon 1980) specifically excludes from its coverage a transaction in which an interest in real property is given as security. 13 Pa.Cons.Stat.Ann. § 9104(10) (Supp. Purdon 1980). Under state law, the law of secured transactions (as that term is generally understood) does not apply to security interests in real property. Even though the parties may have intended to create a security interest in real property, the law does not provide for such a device. What is provided for, however, is the concept of mortgage, whereby the owner of property can convey an interest in real property, generally termed a lien, to another.

The Bank has confused the concept of "an interest in property which secures a debt or obligation" in the general sense, with the specific notion of a security interest under the UCC and the similar, though broader, concept of "security interest" under the Bankruptcy Code.

Under the Bankruptcy Code, a "security interest" is defined as a "lien created· by agreement." 11 U.S.C. § 101(37) (1979). A lien is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(28) (1979). Under the Code, our analysis must be whether there has been "a charge against property to secure repayment of a debt created by agreement."

It becomes apparent, when the transaction is examined as a whole, that a

---

**2.** For the sake of clarity, we will enclose the words "security interest" in quotation marks when referring to that concept under the Bank-

ruptcy Code. Security interest, when not enclosed in quotation marks, refers to the concept under the UCC, or state law.

charge against property was *not* created *by agreement* in this case. The charge against property was created by the docketing of the confessed judgment with the Prothonotary of the state court, and at no time before. The parties could not create a charge against the property of the debtor by agreement, except by mortgage. The parties may have agreed and intended to create the charge against the debtors' property, but the law of Pennsylvania prevents them from doing so. In conclusion, we are not persuaded that the lien held by the Bank in this case is a security interest; under the provisions of the Bankruptcy Code, the Bank's lien can only be classified as a "judicial lien."

The Bank offers as further support of the above argument the fact that some courts have considered confessed judgments as equivalent to "security interests" under the provisions of the Federal Truth in Lending Act.[3] However, in *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278 (7th Cir. 1980), the Seventh Circuit rejected an argument that a Supreme Court decision construing the now repealed Bankruptcy Act controlled the interpretation of the Truth in Lending Act. We believe the converse is true for the same reasons. As stated by the Court in *Valencia*, "an interpretation of the Bankruptcy Act sheds little light on the proper interpretation of the TILA; the two statutes differ fundamentally in nature and purpose." *Valencia, supra* note 7, at 1284. We adopt the persuasive reasoning in *Valencia* as dispositive of the challenge here presented.

■ The Bank does not attack solely the classification of its lien as a "judicial lien" in its brief; it also argues that despite that classification, the lien it holds is the "functional equivalent" of a mortgage, and thus not subject to avoidance.

The Bank argues that under the provisions of the Code, there are several ways to create a security interest in real property other than by mortgage. While the concept of "security interest" under the Code theoretically allows a security interest other than mortgage in real property, the Bank offers no example of such alternative interests permissible under Pennsylvania law. The Bank cites cases which hold that the confessed judgment is a mode of giving security to a creditor. We recognize that a judgment lien is security for an obligation; that does not make that lien either a security interest or a mortgage.

A judicial lien is not, in light of the Bankruptcy Code, the functional equivalent of a mortgage. We conclude that the Bank's lien is a judicial lien which may be avoided to the extent that it impairs the debtor's exemption.

■ The Bank also offers a constitutional challenge to the operation of 11 U.S.C. § 522(f) (1979) based upon the holding of *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) interpreting the Fifth Amendment. We have considered and rejected the identical constitutional challenge several times before, and find no compelling reason to modify our decision of *In re Burkholder*, 11 B.R. 346 (Bkrtcy.E.D.Pa.1981).

For all the above reasons, we will dismiss the Bank's objections to debtors' proposed lien avoidance. The debtors' application to avoid the Bank's judicial lien to the extent it impairs the claimed exemption will be granted.

---

**3.** The so-called Truth in Lending Act (a/k/a TILA) is codified at 15 U.S.C. §§ 1601–1693r (Supp. 1975–1980).